# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CRAIG NEAL, #351405 | * | |
| Plaintiff | * | |
| v | * | Civil Action No. PJM-12-524 |
| MICHAEL J. STOUFFER, et al. | * | |
| Defendants | * | |

\*\*\*

## MEMORANDUM OPINION

Before the Court is Craig Neal's ("Neal") Complaint filed pursuant to 42 U. S. C. § 1983. Defendants, former Commissioner of Correction J. Michael Stouffer, Warden Solomon Hejirika, Sr., Metropolitan Transition Center (MTC), Assistant Warden Kathleen Landerkin, MTC, and former Warden at Western Correctional Institution (WCI), J. Philip Morgan, by their counsel, have filed a Motion to Dismiss or, in the Alternative for Summary Judgment with exhibits and declarations.[1] (ECF No. 14) to which Neal has filed a reply with exhibits and declarations.[2] ECF No. 24. The matter has been fully briefed, and a hearing is deemed unnecessary. *See* Local Rule 105.6 (D. Md. 2011). After careful review of the pleadings, exhibits, and applicable law, the Court will grant Respondent's Motion for Summary Judgment.

---

[1] The record will be amended to show Defendant Stouffer's correct name is J. Michael Stouffer . He is presently Deputy Secretary of Operations for the Department of Public Safety and Correctional Services. On December 19, 2011, Frank B. Bishop succeeded J. Philip Morgan as Warden of the Western Correctional Institution. *See* F.R. Civ. P. 25(d) (action does not abate when public officer who is a party to the action ceases to hold office while the action is pending).

[2] Four months after Defendants filed their dispositive motion, Neal filed a Motion to Amend the Complaint to add Lieutenant Willie Georgie ("Georgie") as a defendant in this proceeding. Adding Georgie as a party defendant at this late stage of the proceeding would not affect the outcome of this case.

**PLAINTIFF'S CLAIMS**

Neal, who is presently an inmate at WCI, claims that in October of 2011, while he was incarcerated at MTC, Warden Hejirika and Assistant Warden Landerkin threatened to terminate him from his prison job in electrical maintenance, increase his security classification from minimum to medium, and transfer him to a more restrictive facility unless he ceased representing other inmates at disciplinary hearings. (ECF No. 1, Complaint). Neal opted to continue in his prison job assignment.

Neal was subsequently reclassified as a medium security inmate after he was reported involved in an assault on another inmate. As a result, he was transferred from MTC, a minimum security facility to WCI, a medium security facility, and was unable to enter a drug rehabilitation program offered at MTC. Neal alleges his reclassification was based on false information fabricated in retaliation for his representing other inmates at disciplinary hearings. He asserts reclassifications and transfers are typically imposed as sanctions where an inmate has been formally charged and found guilty of a major act of misconduct. *See id*. at 5 (attachment). Neal complains that he was not formally accused or found guilty of participating in the assault; thus, he has been denied his right to due process. *See id.* at 6 (attachment).

Neal alleges that November 1, 2011, Warden Hejirika and Assistant Warden Landerkin through their designees Correctional Case Management Specialist II B. Nwosu and Correctional Case Management Manager Chris Smith, in violation of Maryland law and Division of Correction Directives, and in retaliation for exercising his "right" to represent other inmates at disciplinary hearings, entered false information on a security reclassification instrument to cause level. *See id*. at 4 (attachment).

2

Neal avers that under Maryland law and Division of Correction (DOC) Directives (DCDs), he has a liberty interest to be free of restraint in accordance with his "true" security level and classification. *See id.* He claims that shortly after his transfer to WCI, he complained in writing to Warden Bishop about his security classification increase and transfer, and was assigned to the general population after no basis was found for what Neal calls a "fraudulent security threat rationale." *See id.* at 7 (attachment).

Neal complains there remains an "unfair and invalid stigma" in his base file labeling him as an inmate who placed a hit on another prisoner and directly assaulted another inmate which "slams shut" his "ability to progress through the system." He states that in November 2011, he filed a Request for Administrative Remedy (ARP) that was dismissed and his appeal to the Commissioner was also dismissed. *See id.* at 7- 8.

As relief, Neal requests expungement of the alleged false information, reclassification of his "accurate security score level," an order enjoining Defendants from retaliating against him and monetary damages. He also seeks lost wages and restoration of diminution of confinement credits.

## BACKGROUND

It is undisputed that Neal was incarcerated at MTC from June 11, 2011 until his transfer to WCI on November 2, 2011. He is currently in the general population at WCI.

In response to Neal's assertion that he was threatened with loss of his prison job for representing other inmates at disciplinary hearings, Assistant Warden Kathy Landerkin attests that she neither threatened Neal with termination from his prison job at MTC, nor threatened to increase his security classification if he continued to represent other inmates at disciplinary

3

hearings. ECF No. 14, Ex. 2 at ¶¶ 1-2, Declaration of Assistant Warden Kathy Landerkin ( "At no time did I threaten to terminate inmate Craig Neal, # 351-405 from his job within MTC Maintenance due to him representing other inmates at their disciplinary hearings. At no time did I threaten to increase inmate Neal from minimum security to medium security due to him representing other inmates at their disciplinary hearings."). Landerkin attests that she advised Neal he could not spend his working hours representing other inmates at disciplinary hearings while assigned to a job in the MTC Maintenance Department. She told him that he needed to choose between a maintenance job and acting as an inmate representative. Neal chose to keep his electrical maintenance job. *See id*. at ¶¶ 3-5. Landerkin states that while inmates may request representation at disciplinary meetings, Neal does not have a "right" to act as a representative in a disciplinary hearing. *See id*. at ¶ 6. MTC and Maryland state regulations limit who may act as a representative. *See id*. At MTC, an inmate may not act as a representative at disciplinary hearings if it conflicts with his job or program assignment. *See id*. at ¶ 7. Former MTC Warden Hejirika states in his declaration that he "has no knowledge of this incident." ECF No 14, Ex. 5, ¶ 1.

According to the declaration of Lieutenant Willie Georgie ("Georgie), an assault occurred in MTC's G Dorm on October 29, 2011. ECF No. 14, Exhibit No. 3 at ¶ 2, Declaration of Lt. Willie Georgie. Georgie attests intelligence information received from reliable confidential informants indicated the victim of the assault, Kevin Peterson, owed money on a gambling debt and the assailants were led by the "jailhouse lawyer" in G Dorm. *See id*. Neal was known as the inmate representative or the "jailhouse lawyer" at the time of the incident. *See id*. Neal was also identified as one of the inmates who stabbed Peterson. *See id*. After confirming the intelligence,

4

Georgie submitted this information to Warden Hejirika with a recommendation to transfer Neal to MTC.³ *See id.* Neal was also added to Peterson's enemy list. *See id.* Neal attests this information was fabricated. ECF No. 24, Ex. p-1 (declaration of Craig Neal).

On November 1, 2011, a Security Reclassification Instrument recommended increasing Neal's security classification from minimum to medium security based on his direct involvement in the assault. ECF No. 14, Ex. 6. In the recommendation, case manager Chris Smith, described Neal as "a clear threat to institutional security" and concluded, "[a]s such, med[ium] Sec[urity] is warranted." *See id.* at 2. Neal was transferred to WCI the following day, November 2, 2011, and placed on administrative segregation because he was a new transfer pending review of appropriate housing. ECF No. 14, Ex. 7 and 8.

On December 2, 2011, Neal was approved for general population status at WCI. ECF No. 14, Ex. No. 9. On March 14, 2012, Neal was placed on the vocational shop waiting list and recommended to continue academic student assignments. ECF No. 14, Ex. No. 10. Neal does not aver he is prevented from representing other inmates at hearings at WCI.

James Bennett, Correctional Case Management Specialist II attests there is no record that WCI Warden Frank Bishop discussed or corresponded with Neal in regard to the matters alleged in this case. ECF No. 14, Ex. 11 at ¶ 3, Declaration of James Bennett. Additionally, Bennett states there is also no current Intelligence/Investigative (INTEL) file on Neal at WCI referencing this Complaint. *See id.* at ¶ 4.⁴

---

³ Neal was not charged with a rule infraction and his length of sentence was unaffected.

⁴ Neal disputes this assertion, positing that such information was the basis for a decision on November 30, 2012 to disapprove his reassignment from medium to minimum security. ECF No. 25, Ex. 2 and 3.

Neal did not file any Administrative Remedy Procedure ("ARP") requests concerning the allegations in the instant Complaint. ECF No. 14, Ex, 12, Declaration of Sergeant Jeffrey C. Shimko.  On November 28, 2011, Neal filed a grievance with the Inmate Grievance Office (IGO), complaining about his transfer from WCI on November 1, 2011, increase in his security classification from minimum to medium security, and loss of his job at MTC. ECF No. 14, Ex. 13 at ¶3, Declaration of Scott S. Oakley, Executive Director.  The grievance was dismissed on January 19, 2012, for failure to state a claim upon which administrative relief can and should be granted.  *See id*. There is no record that Neal sought additional review of that determination.

## STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is properly granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party must demonstrate through the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," that a reasonable jury would be unable to reach a verdict for the non-moving party. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24 (1986). When this burden is satisfied, the non-moving party then bears the burden of demonstrating that there are disputes of material fact and that the matter should proceed to trial. *See Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986).

A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. In considering a motion for summary judgment, a judge's function is limited to

determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *See id.* at 249. Further, a court must construe the facts in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *In re: Apex Express Corporation*, 190 F.3d 624, 633 (4th Cir.1999). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. Mindful that Neal is a self-represented litigant, this Court has construed his pleadings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## DISCUSSION

As noted, the Complaint is filed pursuant to 42 U.S.C. § 1983. Section 1983 " ' is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.' " *Albright v. Oliver,* 510 U.S. 266, 271(1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). To state a claim under § 1983, a plaintiff must allege two essential elements: 1) that a right secured by the Constitution or laws of the United States was violated, and 2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). In this case, Complaint fails to identify any constitutional right or federal law that has allegedly been violated.

The Due Process Clause of the Fourteenth Amendment "protects persons against deprivations of life, liberty, or property." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "A liberty interest may arise from the Constitution itself, by reason of the guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Id*. (citation omitted). "[L]awful incarceration brings about the necessary withdrawal or

limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system," prisoners have limited liberty interests. *Sandin v. Conner*, 515 U.S. 472, 485 (1995). "The Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement," although "a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations." *Wilkinson*, 545 U.S. at 221–22.

"[T]he touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.' " *Wilkinson*, 545 U.S. at 222, 125 S.Ct. 2384 (quoting *Sandin*, 515 U.S. at 484). In cases where a restraint does not lengthen a sentence, the appropriate inquiry is whether it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

**A.     Prison Job and Programs**

Neal claims that Warden Hejirika and Assistant Warden Landerkin threatened his prison job and caused his reclassification so as to disqualify him from drug treatment programming. An inmate, however, is not constitutionally entitled to a prison job. "[T]he classifications and work assignments of prisoners ... are matters of prison administration, within the discretion of the prison administrators...." *Altizer v. Paderick*, 569 F.2d 812, 813 (4th Cir. 1978); *see also Gibson v. McEvers*, 631 F.2d 95, 98 (7th Cir. 1980) ("An inmate's expectation of keeping a certain prison job does not amount to a property or liberty interest entitled to protection under the Due Process Clause."); *Weinberger v. United States*, 268 F. 3d 346, 361 n. 6 (6th Cir. 2001)

(discretion vested in corrections officials to set conditions of prison employment precludes implication of a liberty interest); *James v. Quinlan*, 866 F.2d 627, 630 (3d Cir.1989) (same); *Ingram v. Papalia*, 804 F.2d 595, 596 (10th Cir. 1986) (Constitution does not create a property interest in prison employment); *Flittie v. Solem*, 827 F.2d 276, 279 (8th Cir. 1987) (inmates have no constitutional right to be assigned a particular job). No due process liberty interest is implicated and Neal is not entitled to a hearing to a hearing on the issue of his employment in a state prison. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Similarly, prisoners have no due process right to participate in vocational or educational programs. *See Women Prisoners of Dist. of Columbia Department of Correction v. District of Columbia*, 93 F.3d 910, 927 (D.C.Cir.1996) (inmates do not have a constitutional right to work or educational opportunities); *see also Bowring v. Goodwin*, 551 F.2d 44, 48 n. 2 (4th Cir. 1977) (rehabilitation is not constitutionally required).[5]

Neal's claims concerning his prison job and inability to participate in a drug treatment program do not amount to claims of constitutional dimension. Accordingly, they provide no grounds for relief.

---

[5] Neal earned ten days each month in sentence reductions credits as an electrician in the Maintenance Department. ECF No. 1 at 1 (attachment). Since Neal has no constitutional right to hold a prison job, it follows that he has no constitutional right to earn concomitant credits from working in a prison job. *See Altizer* 569 F. 2d at 813; *Bulgar v. U.S. Bureau of Prisons,* 65 F.3d 48, 50 (5th Cir. 1995). Further, the Constitution itself does not create a protected liberty interest in the expectation of early release on parole. *See Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7 (1979); *see also Jago v. Van Curen*, 454 U.S. 14, 18 (1981) (mutually explicit understanding that inmate would be paroled does not create liberty interest). "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz*, 442 U.S. at 7.

## B. Retaliatory Transfer

Neal next complains that his security classification was increased and he was transferred to WCI, a medium security facility with a more restrictive environment. In order to prevail on a claim of retaliation, an inmate must show the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994). The Fourth Circuit has explained:

> Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim.

*American Civil Liberties Union of Maryland, Inc. v. Wicomico County*, 999 F.2d 780, 785 (4th Cir. 1993). In the prison context, such claims are treated with skepticism because " '[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.' " *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams v. Rice*, 40 F.3d at 74.

Classification and transfer decisions do not implicate a protected liberty interest or state a claim under § 1983. *See Meachum v. Fano*, 427 U.S. 270 (1976); *Paoli v. Lally*, 812 F.2d 1489, 1492–93 (4th Cir. 1987). A prisoner has no liberty interest in being housed in any particular facility, *see Olim v. Wakinekona*, 461 U.S. 238, 244–45 (1983). Thus, under the facts alleged, Neal fails to demonstrate the claimed retaliatory action, *i.e.* his transfer to a medium security facility, was taken in response to the exercise of a constitutionally protected right or that the action itself violated such a right.

In addition, Neal's complaints about his initial assignment to segregation pending his housing review at WCI do not state a claim of violation of a constitutional right. As noted, an inmate does not have a constitutional right to be placed in a specific security classification, *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976), and a period of segregation does not impose an atypical and significant hardship on him in relation to the ordinary incidents of prison life. *See Sandin,* 515 U.S. at 486–87; *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997). Neal's assignment to segregation pending placement review was not punitive but rather consistent with prison administration practices for maintaining a safe and orderly prison environment. After appropriate housing was determined, Neal was assigned to the general population and placed on lists for prison jobs and educational programs.

Neal identifies no constitutional right to act as a representative for fellow inmates, nor could he. Inmates do not have a constitutional right to act as legal representatives for other inmates. *See Smith v. Maschner,* 899 F. 2d 940, 950 (10th Cir. 1990) (stating a jailhouse lawyer does not have a protected interest in providing legal representation to other inmates); *Thaddeus-X v. Blatter*, 175 F. 3d 378, 396, (citing *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993) (stating a " 'jailhouse lawyer's' right to assist another prisoner is wholly derivative of that prisoner's right of access to the courts; prison officials may prohibit or limit jailhouse lawyering unless doing so interferes with an inmate's ability to present his grievances to a court"); *Beese v Todd*, 35 Fed. Appx. 241 (7th Cir. 2002) (stating prisoners have no constitutional right to provide legal assistance to other prisoners). [6]

---

[6] Neal fails to demonstrate any causal connection between his representation of other inmates and his reclassification and transfer.

It is important to note that the Supreme Court has held that prisoners may not be deprived of access to the courts by denying them available sources of legal expertise where no adequate alternatives exist to assist them in preparing their claims. *See Johnson v. Avery*, 393 U.S. 493 (1969). This case does not pose such circumstances because: 1) Neal was not prohibited from providing representation to other inmates; 2) neither Neal nor his fellow inmates were deprived of access to "jail-house lawyers"; 3) no claim is made that Neal was the only source of legal assistance at MTC; and 4) there is no claim that any inmate was denied access to the courts. Furthermore, the right of access to the courts is personal to the inmate seeking to bring his claims. *See Munz v. Nix,* 908 F. 2d 267 n. 3 (8th Cir. 1990); *Sizemore v. Lee,* 20 F. Supp. 2d 956, 958 (W.D. Va. 1998) (citing *Lewis v. Casey*, 518 U.S. 242, 355 (1996). Neal may not raise a claim of access to the courts on behalf of other inmates.

Neal was not precluded from representing other inmates; rather, he had to choose between his job responsibilities and attending disciplinary hearings for other inmates during his work hours. Neal's transfer was made for security reasons unrelated to his decision to continue with his prison electrical maintenance job. It is well settled that prison administrators are accorded wide deference in determining the policies and procedures for handling inmate populations, and federal courts do not generally interfere in these discretionary decisions. *See generally, Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994) (the Constitution vests no liberty interest in inmates retaining or receiving any particular security or custody status as long as the conditions or degree of confinement is within the sentence imposed).

**C. State Policies and Procedures**

While this Court is mindful that Neal is a self-represented litigant and accords his pleadings liberal construction, it is apparent that he misreads a number of prison rules conferring discretion on prison officials. Moreover, his conclusory assertions fail to demonstrate departure from classification procedures amounting to a constitutional violation., Neal's claims that Defendants failed to abide by established policies, procedures, rules and regulations do not provide a predicate for establishing a violation of due process. *See United States v. Caceres,* 440 U.S. 741, 752–55 (1978) (concluding a violation of agency regulations is insufficient to state a due process violation); s*ee also Riccio v. County of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990) (holding "[i]f the state law grants more procedural rights than the Constitution would otherwise require, a State's failure to abide by that law is not a federal due process issue").

Neal's claim that information was fabricated to increase his security level also fails to state a claim of constitutional dimension.[7] There is no constitutional guarantee protecting inmates from false or wrongful accusations of conduct which may result in deprivation of a liberty interest. *See Freeman v. Rideout*, 808 F.2d 949, 951 (2nd Cir. 1986) ("The act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights."); *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (citing *Sandin v. Conner*, 515 U.S. 472, 475–76 (1995)). Neal has failed to present an actionable claim.

---

[7] In his reply, Neal claims that on October 31, 2012, Lieutenant Georgie told him "So I see that you are still representing inmates at the adjustment committee. You have a lot of influence but now I will make sure you get the same thing that they get. " ECF No. 24, Ex. P. at 4.

## CONCLUSION

For the reasons set forth above, when viewed in the light most favorable to Plaintiff, no genuine issues of material fact are presented. Accordingly, the Court will grant Defendants' Motion for Summary Judgment. Summary judgment will be entered in favor of Defendants and against Plaintiff by separate Order to follow.[8]

February 25, 2013

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

---

[8] This Court need not reach the question of qualified immunity.